## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KEITH BRYANT** | * | **CIVIL ACTION NO: 19-10324** |
| | * | |
| **VERSUS** | * | **JUDGE: GREG G. GUIDRY** |
| | * | |
| **LOUISIANA DEPARTMENT OF** | * | **MAGISTRATE JUDGE** |
| **PUBLIC SAFETY AND** | * | **JOSEPH C. WILKINSON, JR.** |
| **CORRECTIONS, ET AL.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Mr. Keith Bryant, and files this Opposition to the Defendants' Louisiana Department of Public Safety and Corrections, James LeBlanc and Angela Griffin (hereinafter collectively referred to as the "Defendants") Motion to Dismiss.[1]  Mr. Bryant responds with the following law and argument.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Bryant is a victim of unconstitutional policies, practices and customs employed by Defendant Louisiana Department of Public Safety and Corrections (hereinafter "DOC").[2]  Put another way, as described by Louisiana Attorney General Jeff Landry, there "**is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison.**"[3]

Mr. Bryant is indigent and severely mentally ill.[4]  He was unable to post bail after the New Orleans Police arrested him on April 16, 2017, for an aggravated second-degree battery.[5]  Consequently, during the pendency of his criminal case, Mr. Bryant remained incarcerated at the

---

[1] Rec. Doc. 11.
[2] *See* Rec. Doc. 1-1 at ¶ 23.
[3] *Id*. at ¶ 26.
[4] *Id*. at ¶¶ 9, 22.
[5] Rec. Doc. 1-1 at ¶¶ 8-9.

Orleans Parish Justice Center.[6]

On January 11, 2018, Mr. Bryant pled guilty under case no. 535-323 to the aggravated second-degree battery charge for which he was arrested.[7]  His judge sentenced him to a one-year sentence at hard labor in the custody of Defendant DOC.[8]  Mr. Bryant's sentencing judge explicitly ordered that he receive credit for all time he had previously served to the imposition of his sentence.[9]

When Mr. Bryant pled guilty, he had served approximately 271 days in pre-trial detention.   Under La. R.S. 15:571.3, Mr. Bryant was eligible to earn good-time credit and should have only served seventy-five percent of his sentence – or a total of 274 days.[10]  Therefore, Defendant DOC should have released Mr. Bryant from its custody on or before January 14, 2018.[11]

However, Defendant DOC did not free Mr. Bryant on his statutorily entitled release date. Rather, they unconstitutionally overdetained him until April 18, 2018.[12]  Consequently, Mr. Bryant wrongfully served an additional 95 days in Defendant DOC's custody.[13]

While Mr. Bryant became a DOC prisoner on January 11, 2018, he remained housed in Orleans Parish for the entire 95 days that he was overdetained past his release date.[14]  During this time period, despite being a DOC prisoner, the DOC never provided Mr. Bryant with a master

---

[6] *See id*. at ¶ 9.
[7] *Id*. at ¶ 11.
[8] *Id*.
[9] *Id*.
[10] *Id*. at ¶ 12.
[11] *Id*.
[12] *Id*. at ¶ 21.
[13] *Id*. at ¶ 15.
[14] Rec. Doc. 1-1 at ¶¶ 19-20.

prison record – the DOC document that informs the prisoner of his calculated release date.[15]

Even though he did not have the information that he needed to address his overdetention, Mr. Bryant exhausted all administrative remedies available to him at the Orleans Parish Justice Center.[16] He wrote letters and filed grievances to OJC officials;[17] and his attorneys contacted several OJC and DOC officials.  However, without a calculated release date and master prison record, his efforts unfortunately remained unsuccessful.[18]

Mr. Bryant's experience is not an isolated one.[19]  In addition, a 2017 Louisiana Legislative Audit Report specifically found that

> DOC does not have any policies, procedures, manuals, or standardized guidance that outlines the correct way to calculate release dates. This leads to inconsistent calculation methods. For example, we asked two DOC staff to calculate release dates on the same offender, and each staff used a different method to calculate the release date. The two results differed by 186 days.[20]

As the Secretary of the DOC, Defendant LeBlanc was well aware of the following: these lawsuits, the Attorney General's statement, the Legislative Audit Report and the systemic and unconstitutional pattern of overdetaining prisoners like Mr. Bryant.[21]  Likewise, as the administrative program director supervising the pre-classification department housed at DOC headquarters in Baton Rouge, Defendant Griffin was well aware of the systemic and unconstitutional pattern of overdetaining prisoners like Mr. Bryant.[22] Despite such knowledge, these Defendants failed to take appropriate action to cure this systemic problem at the DOC.

---

[15] *See id*. at ¶ 16.
[16] *Id*. at ¶¶ 19-20.
[17] *Id*.
[18] *Id*.
[19] *Id*. at ¶ 27 (referencing four additional lawsuits litigating overdetention matters against the DOC).
[20] *Id*. at ¶ 25.
[21] *E.g. id*. at ¶¶ 3, 32.
[22] *Id*., Rec. Doc. 111-8 at 22:21-23:5, Deposition of Angela Griffin (M.D. La).

Their unconstitutional pattern and practice of overdetaining prisoners in their custody and control is the direct cause of the over detention experienced by Mr. Bryant.

Mr. Bryant originally filed this lawsuit in the Orleans Parish Civil District Court on January 14, 2019.[23]  In turn, the Defendants removed the instant action to this Court on May 10, 2019.[24]  Mr. Bryant has yet to amend the original pleading in this lawsuit.  On August 26, 2019, the Defendants filed a Motion to Dismiss that is the subject of this Opposition.[25]

## II.   STANDARD OF REVIEW

### i.   Rule 12(b)(6) Motion to Dismiss

Dismissal under Rule 12(b)(6) is disfavored and rarely granted.[26] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[27] "Factual allegations must be enough to raise a right to relief above the speculative level."[28] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[29]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[30] However, although required to accept all "well-pleaded

---

[23] *See* Rec. Doc. 1-1.
[24] Rec. Doc. 1.
[25] Rec. Doc. 13.
[26] *See Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).
[28] *Twombly*, 550 U.S. at 556.
[29] *Id*. at 570.
[30] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

facts" as true, a court is not required to accept legal conclusions as true.[31] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[32] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[33] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[34] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[35] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[36] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[37]

## ii.    Qualified Immunity

To plead a Section 1983 claim, a Plaintiff is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[38]

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly

---

[31] *Iqbal*, 556 U.S. at 677–78.
[32] *Id*. at 679.
[33] *Id*. at 678.
[34] *Id*.
[35] *Id*.
[36] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 227, 257 (5th Cir. 2009).
[37] *Carbe v. Lappin*, 492 F.3d 325, 327 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).
[38] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

established statutory or constitutional rights of which a reasonable person would have known."[39] An official sued in his official capacity cannot assert a qualified immunity defense.[40] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[41] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[42]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[43] Part one asks the following question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[44] Part two inquires into whether the alleged violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[45] A court need not address these two questions sequentially; it can proceed with either inquiry first.[46]

"If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"[47] Officials "who reasonably but mistakenly commit a constitutional violation are

---

[39] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[40] *Mitchell v. Forsyth*, 472 U.S. 511, 556 n. 10 (1985).

[41] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[42] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[43] 533 U.S. 194 (2001).

[44] *Id*. at 201.

[45] *Id*. at 202.

[46] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).

[47] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

entitled to immunity."[48]

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[49] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[50] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[51]

### iii.  Amendment

Even if a plaintiff's complaint is found deficient under Rule 12(b)(6) or fails to properly plead sufficient facts to defeat qualified immunity, the proper remedy is to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissing it with prejudice.[52]

## III.  LAW AND ARGUMENT

### A.  Introduction

The Defendants' Motion to Dismiss makes two major arguments: (1) that Mr. Bryant's claims are barred by the doctrine of *Heck v. Humphrey*, 412 U.S. 477 (1994);[53] and (2) that Defendants LeBlanc and Griffin are entitled to qualified immunity with respect to their direct

---

[48] *Williams*, 180 F.3d at 703 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)).
[49] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).
[50] *Id*. at 645.
[51] *Id*. (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)).
[52] *Pub. Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010).
[53] *See* Rec. Doc. 13-1 at 3-7.

personal involvement in response to Mr. Bryant's overdetention.[54]

The Defendants overarching perspective is best summarized by their argument that Mr. Bryant "has not and cannot show that the Defendants' actions violated clearly established law . . . Plaintiff has not shown a violation of his constitutional rights because he has not shown that the nature and duration of his sentence have been overturned or invalidated as required by *Heck*."[55] The Defendants' assertion is wrong; and a direct contradiction to federal jurisprudence in this District Court and beyond.

As Mr. Bryant explains below in further detail, rather than dismissing Plaintiffs' claims against the Defendants, this Court should instead allow this matter to proceed and for discovery to commence – just as has happened with nearly every other lawsuit that accuses the DOC of overdetaining its prisoners.[56]

### B.     State Law Claims

As a preliminary matter, Mr. Bryant asserts that the Defendants' motion does not address any of the Mr. Bryant's clearly pled state law claims (false imprisonment, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and respondeat superior liability against the State of Louisiana).[57]  Consequently, because the Defendants have not moved to dismiss these state law torts, this Court cannot find that the Defendants are entitled to judgment on any of these claims.

### C.     *Heck* Does Not Bar Mr. Bryant's Federal Claims

---

[54] *Id.* at 8-9.
[55] Rec. Doc. 13-1 at 9.
[56] *See e.g. Crittindon v. Gusman*, 17-cv-512, (M.D. La.)(the parties have currently submitted cross motions for summary judgment following discovery); *also Grant v. Gusman*, 17-cv-2797, (E.D. La.)
[57] *See* Rec. Doc. 13 (omitting any mention of Mr. Bryant's state law claims); *also* Rec. Doc. 13-1 (omitting any mention of Mr. Bryant's state law claims).

### i.  Mr. Bryant's Federal Civil Rights Claims Do Not Attack the Validity or Imposition of His Sentence

The Defendants argue that Mr. Bryant's federal claims are barred by the doctrine set forth in *Heck v. Humphrey*[58] and should be dismissed.[59] But *Heck* does not apply in this case. As the Defendants concede, the *Heck* doctrine only bars § 1983 claims where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[60] Stated conversely, where "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ."[61] Importantly, Justice Souter's concurrence in *Heck* cautioned against a broad interpretation, which would result in the denial of recourse in a federal forum for an individual no longer in custody.[62] Notably, Justice Ginsburg also stated in her concurrence that "[i]ndividuals without recourse to the habeas statute merely because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'"[63]

However, the Defendants' opposition does not argue that Plaintiff's claims here in any way imply the invalidity of his conviction or sentence as required under *Heck*. Instead, they lift

---

[58] 512 U.S. 477 (1994).

[59] *See* Rec. Doc. 13-1 at 3-7.

[60] Rec. Doc. 13-1 at 3.

[61] *Heck*, 512 U.S. at 487 (emphasis in original). *See also Hanna v. Maxwell*, 548 Fed. Appx. 192, 196 (5th Cir. 2013) ("The *Heck* doctrine is inapplicable, however, when a § 1983 action does not implicate the validity of a conviction or the duration of confinement."); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945-46 (5th Cir. 1999) ("*Heck* itself provides for preclusion of only those claims that, if proven, would necessarily imply the invalidity of a conviction or sentence.").

[62] *Heck*, 512 U.S. at 500 (Souter, J., concurring) (finding that *Heck* should be narrowly applied so that individuals who were "merely fined… or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences" could obtain § 1983 damages).

[63] *Id*. at 18 (Ginsburg, J., concurring).

language from *Heck*-related cases[64] that are unrelated and inapplicable in this matter as they involved disputes over parole eligibility and the revocation of good-time credits.[65]

By contrast, overdetention cases like the one at issue here do not challenge how long an inmate should have been in prison, but **whether the DOC properly carried out the legally-mandated period of detention**.

It is for that reason – the lack of any challenge to the underlying sentence – that several courts have determined that *Heck* is no bar to overdetention cases.[66] For example, in another Louisiana federal civil rights overdetention case, the Department of Corrections made the same *Heck* argument. The Eastern District of Louisiana flatly rejected this argument from Defendants DOC last year:

> In this case, Plaintiff does not argue that his conviction or sentence were invalid. Instead, he contends that DOC Defendants violated his constitutional rights by failing to release him from prison. **Therefore, *Heck v. Humphrey* is not applicable to this case.**[67]

In Mr. Bryant's case, his judge gave him a one-year sentence in the custody of Defendant DOC.  As clearly stated in La. R. S. 15:571.3, Mr. Bryant was statutorily entitled to the diminution of his sentence.[68]  Furthermore, DOC policy mandates that any credits articulated in

---

[64] *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2006) (parole eligibility); *Preiser v. Rodriguez*, 411 U. S. 475, 489 (1973) (revocation of good-time credits); *Wolff v. McDonnell*, 418 U. S. 539, 554 (1974) (revocation of good-time credits); *Edwards v. Balisok*, 520 U. S. 641, 648 (1997) (revocation of good-time credits).

[65] Rec. Doc. 13-1 at 4-5.

[66] *Chappelle v. Varano*, 11-CV-00304 (M.D. Pa., Oct. 30, 2013) ("The conflict centers on the amount of time he was held in excess of his valid conviction and sentence. . . . Consequently, Defendants' reliance on *Heck* is misplaced; it does not apply to the issue in this case") (emphasis in original); *Griffin v. Allegheny Cnty. Prison*, 17-1560 (W.D. Pa., Nov. 5, 2018) ("A finding for Plaintiff based on the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of *Heck*'s favorable termination rule.").

[67] *Grant v. Gusman*, 17-cv-02797, R. Doc. 46 (E.D. La., March 27, 2018) (emphasis added).

[68] *See* La. R. S. 15:571.3(B)(2)(a)(stating "An offender convicted of a crime of violence . . . shall earn

10

La. R. S. 15:571.3 are immediately awarded upon the initiation of sentence.  *See* DOC Policy B-04-001, § 9I (Attached herein as Exhibit A).  Within this legal framework, Mr. Bryant's legally-mandated period of detention was 274 days.  He was therefore entitled to statutorily release just three days after his January 11, 2018, sentencing.  However, he remained incarcerated for a period of at least 365 days.  This period of overincarceration was beyond the period of time Mr. Bryant should have served in Defendant DOC's custody.  As the *Heck* doctrine is inapplicable to the claims advanced by Mr. Bryant in this case, he is not bound by *Heck*'s favorable termination requirement and their claims must be allowed to proceed.

  ii. **It Would Be Impossible For Mr. Bryant to Produce a Favorable Determination Requirement as Expressed By the Defendants.**

  Although the Supreme Court has not addressed the specific situation here, federal circuit courts have cited to *Spencer v. Kemna* as precedent that when a plaintiff cannot seek writ of habeas corpus, because he is no longer "in custody", that his claims can continue under § 1983.[69]

---

diminution of sentence at a rate of one day for every three days in actual custody held on the imposed sentence, including time spent in custody with good behavior prior to sentencing for the particular sentence imposed as authorized by Code of Criminal Procedure Article 880.").

[69] *See Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir.2001) (stating "*Heck* does not bar Huang's Section 1983 action. While Huang's challenge is aimed at the duration of Yu's confinement, she does not challenge the validity of Yu's conviction. Furthermore, Yu has no habeas remedy because he has long since been released from OCFS custody."); *Wilson v. Johnson*, 535 F.3d 262, 268 (4th Cir. 2008) (stating "[b]arring Wilson's claim would leave him without access to any judicial forum in which to seek relief for his alleged wrongful imprisonment. Quite simply, we do not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right -- freedom -- should be left without access to a federal court."); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 603 (6th Cir. 2007) (stating "[w]e are persuaded by the logic of those circuits that have held that *Heck's* favorable-termination requirement cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of their federal rights."); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir.1999) (indicating that "because Carr was released from prison after the suit was filed, he could no longer bring a habeas corpus proceeding-his only remaining route for getting his disciplinary sanction reversed."); *Nonnette v. Small*, 316 F.3d 872, 876–77 (9th Cir. 2002) (holding that "[i]nformed as we are by the opinions in *Spencer*, we conclude that *Heck* does not preclude Nonnette's § 1983 action."); *Cohen v. Longshore*, 621 F.3d 1311, 1316–17 (10th Cir. 2010) (determining "that a petitioner who has no available remedy in habeas, through no lack

Notably, these claims must be seeking damages for the respondent's use of the wrong procedures rather than questioning the conviction.[70] In fact, Justice Souter's concurrence specifically stated that

> *Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my Heck concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such result. For all that appears here, then, Spencer is free to bring a § 1983 action, and his corresponding argument for continuing habeas standing falls accordingly.[71]

Therefore, the favorable-termination rule does not apply when the plaintiff is not seeking to demonstrate the invalidity of the judgment and when habeas relief is unavailable.

In this matter, habeas relief is not available because Mr. Bryant has been released from incarceration and fully completed his one-year sentence prior to the initiation of this lawsuit.[72] Mr. Bryant further asserts that even when other similarly situated prisoners like him have filed for state habeas relief, Defendant DOC has simply released those prisoners, rendering their habeas proceeding moot.[73] Mootness, in turn, prevents these individuals from seeking a *Heck* judgment of favorable determination.

The Defendants further contend that Mr. Bryant did not "allege that a state or federal court has declared his January 2018-April 2018 confinement invalid. . . . [because he had not filed any] petition for judicial review, or any other similar parallel proceeding, much less that his confinement was been "reversed on direct appeal, expunged by executive order, declared invalid

---

of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim").
[70] *Spencer v. Kemna,* 523 U.S. 1, 19 (1998) (citing *Heck*, 512 U.S., at 482–483).
[71] *Id.* at 19 (1998) (Souter, J., concurring).
[72] *See* Rec. Doc. 1-1 at ¶ 6.
[73] *See, e.g., Hicks v. DPS&C*, 19-cv-00108, R. Doc. 16 (releasing overdetained person within five days of phone call from attorney to DOC headquarters); *Traweek v. Gusman*, 19-cv-01384, R. Doc. 1 (releasing overdetained person within hours of the filing of a habeas petition).

by a state tribunal . . . .'"[74]  Again, the Defendants assertion that *Heck* should apply in Mr. Bryant's case would generate absurd results. Mr. Bryant could not have his sentence reversed on direct appeal because he took a plea deal.[75] Expungement is a remedy that does not provide a judgment of favorable determination in Louisiana; rather it simply removes a defendant's valid convictions from public view.

Lastly, the judicial review proceeding referenced in La. R. S. 15:57.15 was not available to Mr. Bryant for several reasons.  First, as alleged by Mr. Bryant in his complaint, he never received any documentation from Defendant DOC concerning his release date.[76] Second, this is a remedy exclusively available to **committed** prisoners in Defendant DOC's custody − not released prisoners like Mr. Bryant.[77]

In summary, *Heck* is inapplicable in Mr. Bryant's case because he is not challenging his conviction or sentence.  Instead this is a matter of DOC overdetaining Mr. Bryant past his statutorily entitled release date.  Furthermore, *Spencer* and its progeny clarify that in circumstances like Mr. Bryant's *Heck* does not bar a plaintiff from bringing a § 1983 suit when he cannot produce a judgment of favorable determination because habeas (and other judicial) proceedings are unavailable.  As such, this Court should deny the Defendants' Motion to Dismiss in this matter.

### D.      Qualified Immunity Does Not Shield the Defendants From Suit

#### i.      The *Heck* Doctrine Has No Application to the Qualified Immunity Analysis

---

[74] Rec. Doc. 13-1 at 5.

[75] *See* Rec. Doc. 1-1, at ¶ 11.

[76] Rec. Doc. 1-1, at ¶ 16.

[77] *See* La. R. S. 15:571.15 (stating "[v]enue in any action in which an individual **committed** to the Department of Public Safety and Corrections contests the computation of his sentence or sentences . . .)

The Defendants point to no authority for their proposition that the Heck doctrine applies to this Court's assessment of qualified immunity – because it does not.[78] Defendants argue (without citation) that because of *Heck*, "Plaintiff has not and cannot show that his constitutional rights were violated . . . ."[79] But the *Heck* analysis does not involve a determination of whether constitutional rights are established or whether these same rights were violated. Instead, it is merely a jurisdictional bar that determines when a statutory cause of action for violation of constitutional rights accrues.[80] As detailed above, *Heck* is inapplicable to the claims raised by Mr. Bryant in this litigation entirely. Further, *Heck* does not and cannot speak to whether the Defendants violated Mr. Bryant's constitutional rights as alleged.

### ii. Being Timely Released at the Expiration of a Prison Sentence is a Clearly Established Due Process Right

The Fifth Circuit has articulated that "there is a clearly established right to timely release from prison."[81] The precedent of this Circuit "establishes that a jailer has a duty to ensure that inmates are timely released from prison."[82] This duty is breached after "the expiration of a reasonable time for the proper ascertainment of the authority upon which [the] prisoner is detained."[83] Particularly in cases "where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions."[84] And a jailer who

---

[78] *See e.g., Walter v. Horseshoe Entertainment*, 483 Fed.Appx. 884, 886 (5th Cir. 2017) (unpublished) (declining to reach qualified immunity where claims found to be barred by *Heck*).

[79] Rec Doc. 13-1 at 9.

[80] *Heck*, 512 U.S. at 489-490 (holding "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction of sentence has been invalidated").

[81] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

[82] *Id.*, citing *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir.1968).

[83] *Whirl*, 407 F.2d at 792.

[84] *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976) (en banc).

"negligently establishes a record keeping system in which errors . . . are likely . . . will be held liable."[85] Where "a prisoner remains incarcerated after the legal authority to hold him has expired," the Fourteenth Amendment Due Process Clause is violated.[86]

A sister Court in this Circuit has already recognized Plaintiff's clearly established rights in a 2018 ruling that denied the same Defendants' as here Motion to Dismiss.  That Court stated that "under very well-established Fifth Circuit precedence, the jailer has the duty to make sure that persons in that jailer's custody do not serve more than their sentence."[87] In denying the Defendants' Motion with respect to their assertion of qualified immunity on that plaintiff's individual capacity claims, this Court held: "There is a clearly established constitutional right in this case. Each of the parties concede that."[88]

The DOC Defendants are "jailers" within the meaning of *Porter*. Mr. Bryant became a DOC-sentenced prisoner the day after his sentencing.[89] He was "committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department."[90]

*Owens v. Stalder*, *supra*, affirmed the district court's denial of qualified immunity on a claim that Owens had been overdetained by failure to calculate his good time credits retroactively to the date of his sentencing.[91] The defendants in *Owens* were Richard Stalder (then-Secretary of DOC), James LeBlanc (the current Secretary and Defendant in this case), and three other DOC employees (Henry Goines, Rodney Slay, and Janice Elkins) "all of whom

---

[85] *Id*.
[86] *Owens v. Stalder*, 638 Fed.Appx. 277, 282 (5th Cir. 2016) (unpublished).
[87] *See Crittindon v. Gusman*, 17-cv-512, Rec. Doc. 81 at 13 (M.D. La. Sep. 18, 2018).
[88] *Id*. at 50.
[89] *See* LA. R.S. § 15:566.2.
[90] LA. R.S. § 15:824 (A).
[91] 638 Fed.Appx. 277 at 282.

[were] records analysts employed by the DPS&C."[92] *Owens* establishes that DOC employees can be individually liable for overdetention of DOC-sentenced prisoners.

A supervisory official is liable under 42 U.S.C. § 1983 when "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in constitutional injury."[93] And to ultimately prevail on a claim of supervisory liability for constitutional violations committed by subordinates, a plaintiff must show that the defendant "disregarded a known or obvious consequence of his action."[94]

Here, Defendants Leblanc and Griffin affirmatively participated in the conduct that resulted in Mr. Bryant's overdetention.[95] These Defendants disregarded the known or obvious consequences of a system without recourse for delays in calculating release dates for prisoners recently remanded to DOC's custody, and then failed to implement directives and develop safeguards that to prevent Mr. Bryant's overdetention.[96]

Defendant James LeBlanc is DOC's "executive head and chief administrative officer"

---

[92] Neither the Fifth Circuit nor the District Court opinions in *Owens* identify the defendants (other than Stalder and LeBlanc) who were found not to be protected by qualified immunity for the overdetention of the plaintiff in that case. The quoted phrase above is from the Report and Recommendation of the Magistrate Judge that, while modified in plaintiff's favor by the District Court, named the three record analyst defendants. *Owens v. Stalder*, No. 08-0678, 2015 WL 1186253 at *1 (W.D. La. Feb. 3, 2015), report and recommendation adopted in part, rejected in part, 2015 WL 1047585 (Mar. 10, 2015), aff'd, 638 Fed.Appx. 277 (5th Cir. 2016).

[93] *Gates v. Texas Dep't of Prot. & Reg. Servs*., 537 F.3d 404, 435 (5th Cir. 2008); *see also Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981), and *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[94] *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011).

[95] In the following section, Mr. Bryant will cite to several facts that are not in his Original Petition for Damages filed in Orleans Parish District Court but that buttress his position that Defendants LeBlanc and Griffin are not entitled to Qualified Immunity.  Pursuant to Fed. R. Civ. P. 201(c)(2), Mr. Bryant asks that this Court take judicial notice of each of these facts that were not known to the Plaintiff upon his original filing, but have become known to the public through the discovery process in litigation similar to Mr. Bryant's.

[96] Rec. Doc. 1-1 at ¶¶ 28, 32.

and has "responsibility for the policies of the department" and "for the administration, control, and operation of the functions, programs, and affairs of the department."[97] In a deposition in a similar and contemporaneous lawsuit, Defendant LeBlanc admitted that he is responsible for ensuring (1) DOC only detains those persons that it has authority to hold, and (2) people are released from the Department of Corrections when there is no longer legal authority to detain them.[98]

Defendant Angela Griffin is the administrative program director supervising the pre-classification department housed at DOC headquarters in Baton Rouge.[99] Griffin's department was responsible for pre-classification of DOC-sentenced prisoners with convictions from Orleans Parish.[100] She is personally aware that "delays in conducting time calculation could result in persons being held past their release date."[101] After calculation of the release date of a newly-sentenced DOC prisoner, Griffin's department was also responsible for sending the release date information to the facility where the prisoner is located.[102]

These Defendants cannot escape liability as supervisors at this early stage in litigation. The Petition in this case, as originally filed in state court, establishes two separate theories of supervisory liability: (1) failure to adopt policies that could have prevented the Plaintiffs' injuries,[103] and (2) failure to train and to supervise department employees, resulting in the

---

[97] La. R.S. 36:403.

[98] *See Crittindon v. Gusman*, 17-cv-512, Rec. Doc. 111-19 at 22:5-15, Deposition of James LeBlanc (M.D. La.).

[99] *Id.*, Rec. Doc. 111-8 at 22:21-23:5, Deposition of Angela Griffin (M.D. La).

[100] *Id.* at 25:3-8, 27:3-12.

[101] *Id.* at 77:3-10, 86:19-24.

[102] *Id.* at 75:4-18.

[103] A supervisor's failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *E.A.F.F. v. United States*, 955 F.Supp.2d 707, 739 (W.D. Tex. 2013), aff'd sub nom. *E.A.F.F. v. Gonzalez*, 600 Fed. Appx.

Plaintiffs' injuries.[104] With respect to causation on either of these theories, the Fifth Circuit instructs:

> A causal connection may be established . . . where the constitutional deprivation and practices occur as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates, . . . , or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs.[105]

As noted in the previous section, to ultimately prevail on a claim of supervisory liability for constitutional violations committed by subordinates, a plaintiff must show that the defendant "disregarded a known or obvious consequence of his action."[106] A defendant can be on notice as to the risk of harm from his actions by virtue of the sheer fact that the consequences are obvious.[107]

In this case, the each of the Defendants LeBlanc and Griffin were on notice that their pre-classification practices caused DOC-sentenced prisoners to be detained beyond their release dates as a matter of course. They knew from the 2012 Lean Six Sigma ("LSS") study that: (1) DOC was failing to timely release over two thousand DOC-sentenced prisoners per year, by an

---

205 (5th Cir. 2015), citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). *See also Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008); *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397–98 (5th Cir. 2017).

[104] Fifth Circuit jurisprudence establishes a three-factor analysis of a supervisor's liability for failure to train or supervise an employee even where the supervisor is not personally involved in the employee's conduct which violated the plaintiff's constitutional rights. That test requires the plaintiff to prove that: "(1) the supervisor failed to train or supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 453 (5th Cir. 1994); *Porter v. Epps*, 659 F. 3d 440, 447 (5th Cir. 2011); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

[105] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983), citing *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983), *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981), *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir. 1980), and *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).

[106] *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011).

[107] *See, e.g., Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976).

average of 71 days' overdetention per prisoner,[108] (2) that the pilot programs implemented from the LSS study were only projected to reduce these constitutional violations to 1500 per year with an average 60 days' overdetention,[109] and (3) that neither the study nor the pilot programs ultimately implemented by the Defendants addressed delays in transmission of pre-classification documentation from sheriffs to the DOC.[110]

It was not only an obvious consequence, but was definitively known after the pilot programs undertaken with the LSS study in 2012, that without addressing pre-classification delays external to DOC, DOC-sentenced prisoners would be held for an average of two months beyond their release dates even if the LSS study recommendations were implemented. Defendant Griffin conceded, "the Department of Corrections knew at the time of this study that one of the consequences of the delays in time calculation was that prisoners were at risk for release beyond their due dates."[111]

In turn, the Defendants failed to complete Mr. Bryant's sentencing calculation and issue his release in a timely manner. Further, the Defendants knew from the 2012 Lean Six Sigma study that: (1) over 2,400 DOC-sentenced prisoners per year were entitled to immediate release at the time the Defendant DOC calculated their release dates; (2) that the prisoners, once released, were held an average of 71 days beyond their release dates; and (3) that this massive and routine violation of civil rights was, in part, due to lack of timely calculation of recently sentenced DOC prisoners. In spite of this, Defendants LeBlanc and Griffin failed to establish

---

[108] *See Crittindon v. Gusman*, 17-cv-512, Rec. Doc. 111-8, Deposition of Angela Griffin, 101:11-102:13; Rec. Doc. 31, Lean Six Sigma Study, slide 17.
[109] *Id*. Rec. Doc. 111-8, Deposition of Angela Griffin, 104:17-23; Rec. Doc. 31, Lean Six Sigma Study, slide 5.
[110] *Id*. Rec. Doc. 111-8, Deposition of Angela Griffin, 110:20-111:1; Rec. Doc. 31, Lean Six Sigma Study, slide 8.
[111] *Id*. Rec. Doc. 111-8, Deposition of Angela Griffin, 110:20-111:1

policies to track the location of newly sentenced DOC prisoners so as to allow timely calculation of prisoners' release dates.

In cases such as *Whirl*, *Porter*, and *Owens*, the Fifth Circuit has made perfectly clear Defendant LeBlanc and Griffin cannot pawn off their failures on other actors. Likewise, a Court in this District has already denied a Motion to Dismiss based on qualified immunity from Defendant LeBlanc.[112]  Specially, that Court stated

> Taking Plaintiff's factual allegations as true, as required when evaluating a motion to dismiss, Plaintiff has alleged that there was a pattern of overdetention at the DOC and that ***Secretary LeBlanc knew of this overdetention, but acted with deliberate indifference by failing to implement a policy whereby the DOC immediately calculates an inmate's sentence upon entry into the DOC system and by failing to train and supervise his employees on when inmates should be released from DOC custody***. Therefore, Plaintiff has met his burden in demonstrating that Secretary LeBlanc is not entitled to qualified immunity in this case.[113]

Consequently, in light of the allegations in Mr. Bryant's original state court petition, qualified immunity does not protect Defendants LeBlanc and Griffin from suit.

WHEREFORE, Mr. Bryant respectfully requests that this Court deny the Defendants Motion to Dismiss.

Respectfully submitted,

/s/ *Emily H. Posner*
Emily H. Posner (La. Bar No. 35284)
7214 St. Charles Box 913
New Orleans, Louisiana 70118
Ph:     (225) 746-8820
Fax:    (225) 208-1439
Email:  ep@emilyposnerlaw.com

---

[112] *See Grant v. Gusman*, 17-cv-2797, Rec. Doc. 66 at 23 (E.D. La Aug. 14, 2018)(Order denying Defendant LeBlanc's Motion to Dismiss).
[113] *Id*. (emphasis added).

*Attorney for Keith Bryant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Emily H. Posner*
Emily H. Posner